**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GUY MATTHEWS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 25-CV-3697** |
| | : | |
| BRITNEY HUNER, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                               **MAY 22, 2026**

*Pro se* Plaintiff Guy Matthews brings this civil action pursuant to 42 U.S.C. § 1983, naming as Defendants numerous individuals employed by the Pennsylvania Department of Corrections ("DOC") and the private medical contractor at SCI Phoenix, where he is incarcerated. The Court previously granted Matthews leave to proceed *in forma pauperis*. Currently before the Court are the Defendants' Motions to Dismiss Matthews's Complaint and Matthews's request for preliminary injunctive relief. (*See* ECF Nos. 14, 17, 31.) For the following reasons, the Court will grant the Motions to Dismiss, deny the request for a preliminary injunction, and provide Matthews with leave to file an amended complaint as to certain claims.

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

In October 2021, Matthews had a massive hemorrhagic stroke that left him incontinent in his bowels and bladder and paralyzed on his left side. (Compl. at 7–8.) He has suffered other physical and psychological effects from his stroke and the aftermath, including back problems,

---

[1] The facts set forth in this Memorandum are taken from Matthews's simultaneously submitted Complaint, Exhibits, Memorandum of Law, and Motion for Injunctive Relief. (*See* ECF Nos. 2, 2-1, 2-2, and 3.). The Court adopts the pagination assigned to all filings by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary.

anxiety, apraxia, PTSD, mood swings, and other issues with mobility and safety.  (*Id.* at 8.)  His incontinence has caused tension with his cellmates.  (*Id.*)  He alleges that he "was recommended for [a] single cell due to [his] injuries," but has not been provided with the single cell and continues to be housed with a cellmate.  (*Id.*)  His exhibits indicate that on September 27, 2022, he was seen by Defendant Dr. Saeed Bazel at a sick call and Bazel told Matthews that he would try to get him placed in a single cell.  (*See* ECF No. 2-1 at 2, 4.)  On November 11, 2022, he was told that Defendant Dr. Anthony Letizio, the on-site Medical Director, had overridden Bazel's recommendation, and that he was "not eligible for a handicap cell."  (*See id.* at 4; *see also* ECF No. 3.)  Matthews filed a grievance, explaining that he had not requested a "handicap cell," only a single cell, and that grievance was denied at all levels of appeal, with the final decision issued on March 20, 2023.  (*See* ECF No. 2-1 at 2 to 6; ECF No. 2-2 at 1 to 2.)  It appears he also filed requests with Defendants Anthony Matteo, Leandra Strenkoski, and Britney Huner between October 2022 and April 2023, using form DC-135A, in which he stated that his request was for a temporary placement in a single cell and that he was "not asking for [a] Z-code," or permanent house-alone status, but that relief was denied.  (*See* ECF No. 2-1 at 18–20; ECF No. 2-2 at 3.)

On January 8, 2025, Matthews "filed a DC-ADM 006 [request for] reasonable accommodations for inmates with disability."  (ECF No. 2-2 at 2; *see also* ECF No. 2-1 at 34.)  On March 3, 2025, he received a memorandum response from Defendant Rebecca Reifer, the DOC's Statewide Inmate ADA Coordinator, "den[ying his] relief despite [his] medical condition."  (ECF No. 2-2 at 2; *see also* ECF No. 2-1 at 15.)  On March 13, 2025, Matthews filed a grievance as to the denial of his request for an accommodation.  (*See* ECF No. 2-1 at 8; ECF No. 2-2 at 2.)  He received a response from Defendant Huner on April 2, 2025, stating that both the Medical Director and the ADA Coordinator had concluded that "a single cell is not medically necessary."  (ECF No.

2-1 at 9; *see also* ECF No. 2-2 at 2.)  His appeals of the grievance response were denied at all levels, concluding on June 25, 2025.  (See ECF No. 2-1 at 10–13; ECF No. 2-2 at 2.)  Separately, Matthews filed requests with Defendants Terra, Huner, Hensley, and Caligiuri in April and May 2025, using form DC-135A, concerning his request for a single cell.  (*See* ECF No. 2-1 at 17, 21–23; ECF No. 2-2 at 3.)  Defendant Hensley "told [him] to see [his] unit team, but [his] unit team refuses to accommodate [him] with a single cell for [his] medical conditions"; Defendant Caligiuri "told [him] to see a sick call physician but [he] is being refused [sic] to see the physician."  (ECF No. 2-2 at 3; see also ECF No. 2-1 at 22–26.)  Matthews also "attempted to refile" his request for an accommodation on June 12, 2025, but never received a response.  (ECF No. 2-2 at 2; ECF No. 2-1 at 35.)

Matthews signed his Complaint in this action on June 30, 2025, and placed it in the prison mail system sometime on or before the postmark date of July 14, 2025.  (*See* ECF No. 2 at 14–15.)  In his form Complaint, the injuries he describes relate to the effects of his stroke, described above.  (*See id.* at. 8.)  The Court understands him to allege in his accompanying Memorandum that the denial of a single cell has caused damage to his "personal safety," because his incontinence generates "problems with cellmates [by] keeping them up all night going back and forth to the bathroom, in diapers which give[] a horrific smell."  (*See* ECF No. 2-2 at 3.)  In the Motion for Injunctive Relief filed concurrently with his Complaint, Matthews explained that his cellmates "have to deal with all [his] medical conditions which is causing conflict . . . and mental health issues," and that he is "forced to tend to [his] bowel/urine incontinence in close proximity with hostile, younger cellmates and [he] should be accommodated" with a single cell.[2]  (ECF No. 3 at

---

[2]  Matthews included with his Complaint two documents addressed to Defendant Unit Manager Strenkowski and authored by two other inmates who had been his cellmates, expressing their belief that Matthews should be housed alone.  (*See* ECF No. 2-1 at 31–32.)

3

1–3.)  His Complaint seeks $100,000 in damages and an injunction directing the Defendants to house him in a single cell.  (*See* Compl. at 8.)

In a prior Order, the Court granted Matthews leave to proceed *in forma pauperis*, appointed the Clerk to request that the Defendants waive service pursuant to a Memorandum of Understanding between the Court and the DOC, and denied his Motion for Injunctive Relief to the extent that he sought a preliminary injunction.  (*See* ECF No. 7.)  The Defendants waived service and filed Motions to Dismiss the Complaint.  (*See* ECF Nos. 9, 14, 16, 17.)  Matthews moved for appointment of counsel, and the Court granted that Motion in part, referring Matthews's case to the Court's Prisoner Civil Rights Panel, explaining to Matthews that he must continue to litigate his case *pro se* unless and until a volunteer attorney offered to represent him; to date, no attorney has accepted representation.  (*See* ECF Nos. 12, 19, 30.)  Matthews also filed four documents that both responded to the Defendants' Motions and appeared to raise issues and facts not included in his original Complaint.  (*See* ECF Nos. 13, 21, 22, 23.)  In light of those additional allegations, on February 24, 2026, the Court entered an Order directing Matthews to either file an amended complaint or indicate to the Court that he intended to stand on his original Complaint.  (*See* ECF No. 28.)  In response, Matthews filed a Notice expressing his intent to stand on his original Complaint.  (*See* ECF No. 29.)

Matthews then filed a document dated May 1, 2026, seeking a preliminary injunction.  (*See* ECF No. 31.)  He "reiterate[s]" that he is seeking "a medical single cell/Z-code cell to protect [him] from [his] cellmates," asserting that his incontinence and other effects from his stroke such as balance and mood issues are "causing problems with cellmates and it's a risk to be with another cellmate that puts [him] in serious danger of being hurt even more."  (*Id.* at 4.)  He asserts that "a vote sheet is to be going around about [his] medical single cell placement," but that "nothing is

being done." (*Id.* at 4–5.)  He also claims that on March 17, 2026, he "was recommended" for referral to a neurologist "due to [his] L-4/L-5 spine injuries," but has not been sent for such treatment. (*Id.*)  He attached a DC-135A form addressed to Defendant Terra, dated April 8, 2026, in which he asserts that he now has a "recommendation from the medical director Dr. Patton for a medical single cell," to which Terra appears to have responded on April 13, 2026, that he "will follow up." (*Id.* at 9.)  Matthews asserts that unnamed persons are retaliating against him for filing this action, in violation of his First Amendment rights. (*Id.* at 5–6, 9.)  He also states that he is "disable[d] as defined under the ADA." (*Id.* at 5.)  He seeks a preliminary injunction ordering "Defendants" to: "immediately send [him] out to a neurologist per Dr. Patton's orders due to [his] incontinence/stroke/serious medical needs"; "pass[his] vote sheet around for [his] medical single cell due to [his] serious medical conditions and to place [him] in a medical single cell"; "always follow the doctor's order to avoid problems"; and "stop retaliating [against him] because [he is] exercising [his] constitutional rights." (*Id.* at 6.)

## II.    <u>STANDARD OF REVIEW</u>

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although

5

the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that *pro se* filings are construed liberally).

## III.   DISCUSSION

### A.   Constitutional Claims

Matthews asserts that the denial of a single cell violated his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### 1.   Defendants Letizio and Bazel

Matthews brings claims against Defendant Letizio and Bazel, who were formerly employed by a third-party contractor to provide medical services at SCI Phoenix. (*See* Compl. at

3–4; ECF No. 2-1 at 2–6; ECF No. 2-2 at 1; ECF No. 14 at 10.) Letizio and Bazel argue that Matthews's claims against them are barred by the statute of limitations. (*See* ECF No. 14 at 11–12.) Claims under § 1983 are subject to a two-year statute of limitations. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citations omitted). "A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citation omitted). "Federal law, not state law, determines when a limitations period begins to run." *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018) (citing *Kach*, 589 F.3d at 634). A statute of limitations begins to run "from the moment that a claim accrues," which is "when the last act needed to complete the tort occurs." *Id.* (citing *Kach*, 589 F.3d at 634). However, "state tolling principles [ ] govern § 1983 claims," unless the state tolling principles contradict federal law or policy, in which case, the federal principles will govern. *Kach*, 589 F.3d at 639 (citations omitted). In Pennsylvania, "lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Davis v. Wells Fargo*, 824 F.3d 333, 344 n.13 (3d Cir. 2016) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). An incarcerated plaintiff's efforts to exhaust administrative remedies toll the running of the statute of limitations. *See Pearson v. Sec'y Dep't of Corrs.*, 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies.").

Matthews learned in November 2022 that Defendant Letizio had overridden Defendant Bazel's request to place Matthews in a single cell, and he filed a grievance as to that denial on November 24, 2022. (*See* ECF No. 2-1 at 2, 4; ECF No. 2-2 at 1.) The final denial of his grievance appeals was dated March 20, 2023. (*See* ECF No. 2-1 at 6; ECF No. 2-2 at 1–2.) At that point, he

7

knew of any injury caused to him by Bazel and Letizio, and had fully exhausted any administrative remedies against them, but he did not file his Complaint in this action until June 30, 2025, at the earliest, when he signed and dated his Complaint.[3] (*See* Compl. at 14.)  Accordingly, his claims against Letizio and Bazel are facially untimely because the Complaint was filed outside the statute of limitations.

The Court has considered whether the claims against Bazel and Letizio are timely under the "continuing violation" doctrine. *See Montanez v. Sec'y Pa. Dep't of Corrs.*, 773 F.3d 472, 481 (3d Cir. 2014) ("[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." (quoting *Colwell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001))).  However, "the continuing violation doctrine does not apply when the plaintiff is aware of the injury at the time it occurred," because "a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation."  *Id.* (internal quotation marks omitted) (first quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003); then quoting *Weis-Buy Servs. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005)).  Matthews does not make any specific allegations as to Bazel's or Letizio's involvement after the denial of his request in November 2022, but even if he had, he was aware of his injury at the time Letizio denied his request, so the continuing violations doctrine would not apply to "continual ill effects" resulting from Letizio's acts in 2022.  Accordingly, the limitations defense as to Defendants Letizio and Bazel appears on the face of Matthews's Complaint, their Motion to Dismiss will be granted, and

---

[3]  A prisoner's complaint is considered filed at the time he hands it over to prison authorities for forwarding it to the Court.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (*per curiam*) ("Under the prison mailbox rule, . . . a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing.").

claims against them will be dismissed.[4]

### 2.    DOC Defendants

Matthews names numerous individual employees of the DOC as Defendants: Rebecca Reifer, Keri Moore, Britney Huner, Erin Caligiuri, Anthony Matteo, Joseph Terra, Nathan Wynder, Mandy Biser Sipple, Charles Hensley, Leandra Strenkoski, and Kristina Owens (collectively, the "DOC Defendants"), some of whom are medical providers and some of whom are non-medical prison officials. (*See* Compl. at 3–6.) The Memorandum of Law that Matthews attached to his Complaint alleges that he communicated with the DOC Defendants beginning in November 2022 when grieving Letizio's decision to deny him a single cell as not medically necessary, then continuing with his request for a single cell as an accommodation for his claimed disability in January 2025, and resulting grievances, appeals, and requests to individual staff members when his requested accommodation was denied. (*See generally* ECF No. 2-2.) Matthews includes Exhibits documenting those communications. (*See generally* ECF No. 2-1.) The DOC Defendants argue that Matthews's allegations do not meet the standard for deliberate indifference to his medical needs, because they amount to nothing more than a disagreement over his treatment. (*See* ECF No. 17 at 5–7.) The Court understands Matthews to be proceeding under two related, yet distinct, theories of deliberate indifference: (a) to his medical needs, and (b) to his health and safety created by dangerous conditions of confinement.

### a.    Deliberate Indifference to Medical Needs

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical

---

[4] The remaining Defendants do not argue that the claims against them are untimely. (*See generally* ECF No. 17.)

needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up). "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)).

Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted), *petition for cert. filed*, 94 U.S.L.W. 3289 (U.S. Mar. 11, 2026) (No. 25-1073). "[P]rison officials may not 'deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)); *see also Montanez*, 154 F.4th at 141 ("[The deliberate indifference] standard can also be met by a defendant abandoning a prisoner in a condition that unreasonably exposes him to the threat of tangible residual injury." (internal quotation marks and citation omitted)).

"Not every complaint of inadequate prison medical care rises to the level of deliberate

indifference." *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic*, 854 F.3d at 227 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* at 228 (cleaned up). "Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." *Id.* (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)). Deliberate indifference "is also evident where prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates," or "when prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." *Lanzaro*, 834 F.2d at 346–47 (cleaned up).

"If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Further, "absent a reason to believe (or actual knowledge) that prison doctors or

11

their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Spruill*, 372 F.3d at 236.

Prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *see also Islaam v. Kubicki*, 838 F. App'x 657, 661 n.2 (3d Cir. 2020) (*per curiam*) (same). However, the United States Court of Appeals for the Third Circuit has recognized that a prisoner may state a claim for deliberate indifference to medical needs where a prison doctor "recklessly disregarded the need" for a particular housing assignment by ignoring the recommendation of a consulting physician. *See Wall v. Bushman*, 639 F. App'x 92, 95 (3d Cir. 2015) (*per curiam*) (reversing grant of summary judgment where disputed issue of material fact existed from which a rational factfinder could conclude that prison doctor recklessly disregarded prisoner's need for a lower-bunk assignment or denied the lower-bunk assignment for non-medical reasons). A prisoner may also state a claim to relief against non-medical prison officials who deny a medically required housing assignment that has been recommended by a doctor. *See Nichols v. Byrne*, No. 15-0527, 2016 WL 4921008, at *3–4 (E.D. Pa. Sept. 14, 2016) (concluding that a plaintiff stated a claim to relief where he alleged that he "was issued a lower bunk pass by the medical staff," but the officials responsible for cell assignments "ignored the pass and forced him to sleep on the top bunk"); *see also Hetsberger v. Essex Cnty. Corr.*, No. 21-9322, 2021 WL 4727476, at *1 (D.N.J. July 19, 2021) (concluding that a plaintiff stated a claim to relief where he alleged that correctional defendants "refused to request Plaintiff be moved to a bottom bunk cell even though there are doctor's orders that he be placed in a bottom bunk" (citing *Wall*, 639 F. App'x at 95)); *Cameron v. Swartz*, 17-0816, 2020 WL

7496317, at \*6 (W.D. Pa. Nov. 19, 2020) ("Refusal to honor bottom bunk and floor passes can be interpreted as deliberate indifference to the need for medical treatment prescribed by prison authorities." (citations omitted)), *report and recommendation adopted*, 2020 WL 7490229 (W.D. Pa. Dec. 21, 2020).

The allegations contained in Matthews's Complaint and the documents on which it relies do not state a claim for deliberate indifference against any of the DOC Defendants. Matthews does not allege that he was denied treatment entirely for his stroke and the resulting complications. Instead, he alleges that his request for a single cell—which he based on concerns that his medical conditions caused vaguely described conflicts with cellmates—was denied. Notably, Matthews's Complaint does not explain why he required a single cell to manage or treat his medical conditions, and his attached grievances instead focused on the impact of his condition on his relationship with his cellmates as the motivating reason for his request. In any event, his "allegations reflect differences in judgment between [Matthews] and [the] medical personnel about appropriate medical treatment, or at most amount to medical malpractice, neither of which is cognizable under the Eighth Amendment."[5] *Montanez*, 154 F.4th at 142 (first citing *Estelle v. Gamble*, 429 U.S. 97,

---

[5] Although Matthews's claims against Letizio and Bazel will be dismissed as untimely for the reasons discussed above, the Court notes that his allegations also fail to state a claim against Letizio and Bazel for deliberate indifference, in any event. Matthews alleges that Bazel endorsed his preferred relief by initially recommending him for a single cell. That Letizio overrode Bazel's recommendation appears from Matthews's allegations to amount to nothing more than a disagreement between medical professionals over the appropriate treatment, and "disagreement of professional opinion among doctors does not equal deliberate indifference." *DeFranco v. Wolfe*, 387 F. App'x 147, 158 (3d Cir. 2010) (citing *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987)); *see also White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor."). In other words, he does not allege any facts from which it could be inferred that Letizio's overruling was a product of deliberate indifference. And, as noted above, Matthews does not specifically allege the involvement of Letizio or Bazel in his treatment after 2022.

106 (1976); then citing *Spruill*, 372 F.3d at 235). And his allegations do not reflect the deliberate indifference of the DOC Defendants who are non-medical officials, because Matthews does not allege that they should have been aware that the medical providers were mistreating him or refusing to treat him entirely. *See Spruill*, 372 F.3d at 236.

#### b.      Conditions of Confinement

For convicted and sentenced state prisoners like Matthews, (*see* Compl. at 7), the Eighth Amendment also governs claims challenging their conditions of confinement, *see Hubbard v. Taylor*, 399 F.3d 150, 164–66 (3d Cir. 2005). "The Eighth Amendment 'prohibits any punishment which violates civilized standards and concepts of humanity and decency.'" *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020). This prohibition imposes "affirmative duties on prison officials to provide humane conditions of confinement." *Id.* (quoting *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015)). To plead a conditions-of-confinement claim, a plaintiff must allege facts to support an objective component that "the deprivation he endured was 'sufficiently serious,'" and a subjective component that "the prison officials had 'a sufficiently culpable state of mind.'" *Id.* (quoting *Thomas*, 948 F.3d at 138); *see also Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991). In general, a prisoner must plausibly allege that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to health or safety. *See Wilson*, 501 U.S. at 298–99; *see also Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.").

Prison officials violate the Eighth Amendment through acts or omissions that deprive an inmate of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating

14

that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are 'incarcerated under conditions posing a substantial risk of serious harm.'" *Clark*, 55 F. 4th at 179 (quoting *Farmer*, 511 U.S. at 834). "However, where conditions are not 'cruel and unusual' but merely 'restrictive and even harsh,' they do not violate the Eighth Amendment but rather 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (quoting *Rhodes*, 452 U.S. at 347). A claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").

Housing inmates in double cells is not *per se* unconstitutional, but "double celling can amount to an Eighth Amendment violation if combined with other adverse conditions." *Nami v. Fauver*, 82 F.3d 63, 66–67 (3d Cir. 1996) (citing *Rhodes,* 452 U.S. at 346–47). "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers," as well as threats of assaults by cellmates. *Id.* at 67 (citing *Tillery v. Owens,* 907 F.2d 418, 427 (3d Cir.1990)).

15

A prisoner may thus state a deliberate indifference claim in this context by "sufficiently alleg[ing] facts from which it can be reasonably inferred that 'he is in imminent danger of substantial injury as a result of being double celled.'" *Hughes v. Miskell*, No. 10-1443, 2010 WL 8499990, at *12–13 (M.D. Pa. Dec. 28, 2010) (concluding that a plaintiff stating a claim to relief where he "alleged that his health and life is being endangered by the decision of Corrections Defendants to place him a cell with another inmate . . . [,] that he has suffered increased episodes of anxiety and depression as well as increased psychotic episodes by being housed with another inmate . . . [,] that his cell mate gave him the rash on his skin and brought the bed bugs into their cell . . . [, and] that the terrible rash and bed bugs bites are causing, in part, his mental condition to rapidly deteriorate" (quoting *Mitchell v. Dodrill,* 696 F. Supp. 2d 454, 468 (M.D. Pa. 2010); and citing, *inter alia*, *Rhodes*, 452 U.S. at 347)), *report and recommendation adopted*, 2012 WL 928428 (M.D. Pa. Mar. 19, 2012); *see also Mattis v. Dep't of Corrs.*, No. 16-306, 2017 WL 6406884, at *12–13 (W.D. Pa. Dec. 15, 2017) (concluding that plaintiff stated a deliberate indifference claim for failure to provide him with a single cell by alleging that he "has particular mental health issues (PTSD, paranoia, anxiety) that make him incompatible with a cell mate, and that double celling exacerbates his mental health issues and makes him act out violently towards his cell partner, noting that he has had violent altercations with his previous three cell mates," and that, due to chronic anxiety from two prior attacks by cellmates, "when he is celled with another inmate, he cannot sleep, concentrate, or function in a normal manner; he suffers excruciating and debilitating headaches that last for hours or days; and he becomes hyper-irritable, volatile, and violent" (cleaned up) (collecting cases and citing, *inter alia*, *Hughes*, 2010 WL 8499990, at *13)).

The Court has also considered whether Matthews's Complaint was intended to assert a claim that some or all of the DOC Defendants' actions constitute a failure to protect him from

16

violence at the hands of another inmate, specifically, his cellmate. (*See, e.g.*, ECF No. 2-1 at 8 (asserting in grievance that "[n]ot only [is he] qualified for a 'medical single cell' but for a 'general population single cell' specifically to provide the necessary safe conditions from hostile cellmates").) Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 833). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. To successfully state a failure-to-protect claim under the Eighth Amendment, a plaintiff must allege: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hamilton*, 117 F.3d at 746. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Matthews makes generalized allegations that his cellmates are hostile to him because of his condition and that hostility causes "conflict" and "problems." (*See* Compl. at 8; ECF No. 2-2 at 3.) He alleges that he "had conflict with" two former cellmates, and that his "current cell[mate] is complaining about this." (Compl. at 8.) He includes grievances that he filed mentioning "dangerous circumstances," "conflict," and "problems with cellmates." (*See* ECF No. 2-1 at 8, 10, 20.) His earliest grievances mentioned "the arguing back and forth with cellmates and the ridicule and embarrassment." (*Id.* at 18–20.) His most complete elaboration of his safety concerns appears in his DC-ADM006 request for accommodation, in which he states that he has "safety concerns because of continuous bowel movement on [him]self, cellmates threatening and taking advantage," then expressed that he wants "to be in a cell where [he is] not threatened [or] taken advantage of so [he] can cleanse [himself,] change [his] diapers[,] and not be ridiculed[,] and be

17

able to move around without disturbing a cellmate . . . [and] to be stress free without arguing with cellmates about waking them up all night and the intense smell of urine and feces." (*Id.* at 34.) These assertions describe an extremely difficult situation, but the bare allegations of "conflict" with past cellmates and a current cellmate who is "complaining" are insufficient to plausibly allege that Matthews previously faced or now faces a substantial risk of serious harm and that any specific Defendant was deliberately indifferent to that risk. *See, e.g.*, *Keeling v. Wetzel*, No. 23-2045, 2024 WL 3770307, at *3 (3d Cir. Aug. 13, 2024) (*per curiam*) ("We agree with the District Court that Keeling's amended complaint does not suggest that the defendants acted or failed to act despite their knowledge of a substantial risk of serious harm. His allegations do not indicate that his cellmate made specific threats of serious harm, describe a history of physical conflict with that cellmate, or otherwise suggest that a substantial risk of being attacked by his cellmate was longstanding, pervasive, well-documented or expressly noted by prison officials in the past." (cleaned up) (quoting *Farmer*, 511 U.S. at 842.)).

Accordingly, the DOC Defendants' Motion to Dismiss will be granted and Matthews's claims against the DOC Defendants will be dismissed.[6]  However, given the allegations in Matthews's various other submissions post-dating his Complaint, particularly his most recent

---

[6] The DOC Defendants also argue that Matthews does not sufficiently allege their personal involvement in his claims because he pleads only that they received and responded to "his grievances, appeals, accommodation request, and inmate requests to staff." (*See* ECF No. 17 at 8–9 (citing, *inter alia*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).)  While the DOC Defendants are correct that "involvement in the *post-incident* grievance process alone does not support personal involvement for purposes of § 1983 liability," (*Id.* at 8 (emphasis added) (citing *Dooley*, 957 F.3d at 374)), it is not entirely clear that Matthews's communication with the DOC Defendants was limited to post-incident grievances, as opposed to requests for prospective and proactive action made directly to those having the authority to determine his housing status. Nonetheless, because Matthews fails to state a deliberate indifference claim against any of the DOC Defendants, the Court need not opine on whether Matthews has pleaded their personal involvement in his claims.

Motion for Preliminary Injunction discussed below, the Court concludes that amendment of his claims against the DOC Defendants would not be futile.

### 3.    Passing References to Other Constitutional Provisions

Matthews's Complaint expressly asserts the Eighth Amendment as the source of his claims. (*See* Compl. at 4.)  His pleadings also mention other constitutional provisions.  However, passing references to legal provisions are insufficient to bring a plausible claim before the Court.  *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue will not suffice to bring that issue before this court.") (cleaned up) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

For example, in his original Motion for Injunctive Relief, Matthews asserts that he "can prove the three elements of a class-of-one claim . . . [, the] Defendants' differential treatment is intentional," and "[t]here is no rational basis for the treatment."  (ECF No. 3 at 4.)  To support a claim under the Fourteenth Amendment's Equal Protections Clause based on a "class of one" theory, a plaintiff must allege he was intentionally treated differently from other similarly situated inmates and that there was no rational basis for the treatment.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"); *see also, generally, Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"); *Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (*per curiam*) (general allegations that plaintiff was treated "less favorably" are not sufficient); *Perano v. Township of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, Perano must allege

19

facts sufficient to make plausible the existence of such similarly situated parties."); *Beitler v. City of Allentown*, No. 22-104, 2022 WL 768151, at *8 (E.D. Pa. Mar. 14, 2022) ("We should dismiss the claim when an incarcerated person fails to identify similarly situated individuals being treated differently."). Matthews merely recites the class-of-one elements in conclusory fashion, but this is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678; *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). And rather than identifying similarly situated individuals, Matthews alleges the opposite: that "inmates are getting Z-codes [and] single cells who do not even have serious medical conditions," as he does. (ECF No. 3 at 3.) Accordingly, Matthews has not adequately pleaded a class-of-one claim.

## B.    Disability Law

Matthews does not expressly state in his Complaint or associated filings that he is bringing a claim for failure to accommodate his disability in violation of federal laws prohibiting disability discrimination. Liberally construing his allegations, the Court has considered whether he states a valid failure-to-accommodate claim under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("Title II" or "ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. ("Section 504" or "RA"). "Both [Title II of] the ADA and the RA require public entities, including state prisons, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019); *see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting the phrase "services, programs, or activities" in Title II of the ADA includes recreational, medical, educational, and vocational prison programs). Courts often address Title II and Section 504 claims "in the same breath, construing the provisions of both statutes in light of their close similarity of

20

language and purpose," since "the scope of protection afforded under both statutes, *i.e.*, the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (cleaned up). Although the substantive standards for determining liability under the RA and the ADA are the same, *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014), a party who seeks to proceed under Section 504 "must show that the allegedly discriminating entity receives federal funding," *McDonald-Witherspoon v. City of Phila.*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013)); *see also* 29 U.S.C. § 794(a).

To state a plausible claim under either the ADA or the RA, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288–89. The element of discrimination by reason of disability can be met if a defendant failed to provide the plaintiff with reasonable accommodations for a disability. *Montanez*, 154 F.4th at 148 (citing *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)). "The duty to accommodate is triggered when a disabled person's need for an accommodation becomes known, either because (1) he requests an accommodation or (2) his disability and concomitant need for an accommodation are open and apparent." *Id.* (citations omitted). If a plaintiff seeks compensatory damages, he "must also show intentional discrimination under a deliberate indifference standard." *Furgess*, 933 F.3d at 289 (footnote omitted). A plaintiff may meet that standard in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that she could prove that the risk of cognizable harm was so great and so

21

obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Haberle*, 885 F.3d at 181 (internal quotations and alterations omitted).

To allege plausibly that he is a "qualified individual with a disability," a plaintiff must provide facts to show that he has a "disability," defined as "any physical or mental impairment that substantially limits one or more major life activities, which includes, among other things, caring for oneself, sleeping, walking, standing, and the operation of a major bodily function, such as functions of the bladder." *Montanez*, 154 F.4th at 146–47 (cleaned up) (citing 42 U.S.C. §§ 12102(1)(A), 12102(2)(A)–(B)). With the passage of the Americans with Disabilities Act Amendments Act ("ADAAA") in 2008, "Congress mandated that the definition of disability shall be construed in favor of broad coverage of individuals to the maximum extent permitted." *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 221 (3d Cir. 2024) (cleaned up). Additionally, the ADAAA requires a "less searching analysis" of whether a plaintiff is "substantially limited." *Kravits v. Shinseki*, No. 10-861, 2012 WL 604169, at *7 (W.D. Pa. Feb. 24, 2012).

The proper defendant under a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002). The proper Defendant under an RA claim is the public entity receiving federal assistance. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals"). Title II of the ADA does not provide for individual liability. *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have

22

concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim.").

Although private contractors and their employees may not be proper defendants under Title II or RA, the United States Court of Appeals for the Third Circuit has held that a public entity retains an "obligation to ensure compliance with Title II and [the RA] even when it contracts out the operation of their programs, services, or activities to third parties." *Montanez*, 154 F.4th at 149; *see also id.* at 151 ("In short, whether or not they use contractors, states remain responsible for ensuring that disabled prisoners can access their prisons' services, programs, and activities on the same basis as non-disabled prisoners." (citation omitted)).   So, the Commonwealth is "obligated to ensure" that its contractors—including medical providers—are in compliance "with federal laws prohibiting discrimination on the basis of disability," and may appropriately be summoned to defend a claim that it failed to meet that obligation.  *Id.* at 151 (quoting *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910 (9th Cir. 2013)).

Matthews plausibly alleges incontinence and mobility issues that constitute a disability. *See id.* at 147.  He pleads that he filed a DC-ADM006 Inmate Disability Accommodation Request Form on January 8, 2025, received Defendant Reifer's denial of that request, then grieved that denial through the appropriate channels to no avail, including filing a second accommodation request on June 12, 2025, that went unanswered.  (*See* ECF No. 2-1 at 8–15, 34–35; ECF No. 2-2 at 2–3.)  But Matthews does not state a claim to relief because he did not name a proper Defendant for any claim under the ADA and RA.  He does not name any public entity, such as the Commonwealth of Pennsylvania or the DOC, as a Defendant, and he expressly indicates that he is suing all of the individual defendants in their individual capacities only, even on his self-generated

23

list of Defendants.[7] (*See* Compl. at 3–6.) However, the Court will grant Matthews leave to amend his Complaint in the event that he can name a proper Defendant and plead facts to support that Defendant's liability for failure to accommodate his disability.

### C.        Preliminary Relief, Piecemeal Pleading, and Leave to Amend

As discussed above, in response to the Defendants' Motions to Dismiss, Matthews submitted documents making new factual allegations post-dating those in his Complaint and raising matters not encompassed within his original Complaint, such as claims of retaliation in violation of the First Amendment for having filed this action. (*See generally* ECF Nos. 21, 22, 23.) However, when the Court gave Matthews an opportunity to file an amended complaint containing all of these allegations in a single document, he declined and chose to proceed with his original Complaint. (*See* ECF Nos. 28, 29.) Matthews has now filed a new "Order to Show Cause" for a preliminary injunction, which raises another set of new facts and again asserts retaliation. (*See* ECF No. 31.) Specifically, Matthews asserts that the new Medical Director at SCI Phoenix, Dr. Patton, has now recommended him for a single cell, but the "vote sheet" that would facilitate his receiving that status is being delayed or obstructed by unspecified Defendants. (*See id.* at 4–6.) He also alleges that he has received a referral for treatment by a neurologist outside the prison for a spinal injury, but that he has yet to receive that treatment. (*See id.*) He attached a DC-135A form addressed to Defendant Terra, dated April 8, 2026, in which he asserts that he now has a

---

[7]  A claim under Title II of the ADA for a past violation is cognizable against an individual defendant in his official capacity. *See Holden v. Wetzel*, No. 18-237, 2021 WL 1090638, at *4 (W.D. Pa. Mar. 22, 2021) (noting that official capacity claims for past violations of the ADA are theoretically actionable). Official capacity claims are indistinguishable from claims against the governmental entity that employs the Defendants. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978))).

"recommendation from the medical director Dr. Patton for a medical single cell," to which Terra appears to have responded on April 13, 2026, that he "will follow up." (*Id.* at 9.) He seeks a preliminary injunction ordering unspecified Defendants to: "immediately send [him] out to a neurologist per Dr. Patton's orders due to [his] incontinence/stroke/serious medical needs"; "pass[his] vote sheet around for [his] medical single cell due to [his] serious medical conditions and to place [him] in a medical single cell"; "always follow the doctor's order to avoid problems"; and "stop retaliating [against him] because [he is] exercising [his] constitutional rights." (*Id.* at 6.)

Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. "The standards for a temporary restraining order are the same as those for a preliminary injunction." *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). Preliminary injunctive relief "is not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). Rather, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Phila.*, 922 F.3d 140, 152 (3d Cir. 2019). "The first two factors are prerequisites for a movant to prevail." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

25

"A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

"The function of preliminary injunctive relief is to preserve the *status quo* pending a determination of the action on the merits." *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020) (emphasis added) (quoting *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984)).  As the Court noted in denying Matthews's original request for injunctive relief, his request to be housed in a single cell immediately does not preserve the *status quo* and is also the primary relief he seeks in his Complaint.  (*See* ECF No. 7 at 2 n.1.)  His new request will be denied on that basis, as well.  (*See id.* (citing *Royer v. Discover Fin. Servs.*, No. 22-1429, 2023 WL 7329494, at *13 (E.D. Pa. Nov. 7, 2023) (denying preliminary injunctive relief where the movants "effectively ask[ed] the Court to grant them the very same relief that they would obtain if they prevailed in this case")).)

His remaining requests for preliminary injunctive relief, concerning referral for outside medical treatment and retaliation in violation of the First Amendment, will also be denied.  The request to be seen by a neurologist is an entirely new allegation based on facts that post-date his Complaint and is not supported by specific facts.[8]  He does not provide any allegation that a specific individual has prevented him from receiving the referral, and his requested relief is addressed generally to "Defendants."  Where there are multiple events and defendants at issue in a plaintiff's claims, alleging personal involvement often cannot be accomplished by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability.  *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014)

---

[8]  The Court has received a Response to Matthews's Motion from Defendants Bazel and Letizio and notes their position that they no longer work at SCI Phoenix and thus have no authority over Matthews's care and that Dr. Patton is not a Defendant in this action.  (*See* ECF No. 32 at 1.)

26

(agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged"). More so here, in the context of an injunction that must, among other things, state with specificity the parties who are to be bound by it. *See* Fed. R. Civ. P. 65(d).

Similarly, Matthews simply makes a conclusory allegation that unspecified Defendants are retaliating against him. In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson v. Rosum*, 834 F.3d 423, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). A prisoner must allege a causal link between the protected conduct and the alleged act of retaliation. *See, e.g.*, *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014) (*per curiam*) ("Thomas' claims against Dr. Ahner consist of conclusory and somewhat cryptic allegations that Dr. Ahner took Thomas off medication, directed others to do the same, and ordered others to create an extreme and stressful prison environment in retaliation for his 2001 lawsuit. The complaint lacks all detail as to the time, place, or manner surrounding the alleged deprivation and it is entirely unclear from the allegations what level of involvement, if any, Dr. Ahner had in Thomas' care"). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422; *see also Oliver v.*

27

*Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, [] conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation."). Matthews does not provide any details about specifically who engaged in retaliatory behavior or what that behavior was, let alone establish a causal link between the filing of this lawsuit or any other protected conduct and any adverse action. Accordingly, he has not met the standard for preliminary injunctive relief.

Matthews's latest filing is also not effective as an amendment of or supplement to his Complaint, because the Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant. *See Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings"); *Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent[] . . . .").

The United States Court of Appeals for the Third Circuit has held that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002); *see also Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). As described above, there is reason to conclude that

amendment to include more factual detail would not be futile.  Accordingly, the Court will grant

Matthews leave to file an amended complaint, in the event that he can cure the defects identified

in this Memorandum.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss will be granted.  The

dismissal of Matthews's claims will be without prejudice.  Matthews may file an amended

complaint.  An appropriate order follows, containing more information about amendment.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, J.**